IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: <br> WORLDSPACE, INC., *et al.*, <br><br> Debtors. | Chapter 7 <br> Bankr. Case No. 08-12412 (LSS) <br> (Jointly Administered) |
| MATHEWKUTTY SEBASTIAN, <br><br> Appellant, <br><br> v. <br><br> ROBERT A. SCHMITZ, SHEARMAN & STERLING LLP, QUEST TURNAROUND ADVISORS LLC, and DONALD J. FRICKEL, <br><br> Appellees. | Civ. No. 15-25 (GMS) |

### MEMORANDUM OPINION

**I.   INTRODUCTION**

Presently before the court is the appeal (D.I. 1) of Mathewkutty Sebastian ("Appellant") from a Bankruptcy Court order (Adv. D.I. 30)[1] and accompanying memorandum opinion (Adv. D.I. 29) (together, "Dismissal Order"), which granted the above-captioned Appellees' motions to dismiss (Adv. D.I. 11, 13, 16) Appellant's Verified Amended Derivative Complaint (Adv. D.I. 19) ("Amended Complaint") on the grounds that Appellant was not a creditor of Chapter 7 debtor WorldSpace, Inc. ("WorldSpace") or its debtor affiliates (collectively, the "Debtors") and thus lacked creditor standing to bring the Amended Complaint, asserting causes of action for breach of fiduciary duty and aiding and abetting breach of fiduciary duty, on behalf of the Debtors' estates. For the reasons that follow, the court will affirm the Dismissal Order.

---

[1] The docket of the adversary proceeding, captioned *Sebastian v. Frickel, et al.*, Adv. Proc. No. 14-50365 (LSS) (Bankr. D. Del.), is cited herein as "Adv. D.I. __."

1

## II. BACKGROUND

Before Debtors sold substantially all of their assets, Debtors provided satellite-based radio and broadcasting services to more than 170,000 subscribers in ten countries and throughout Europe, India, the Middle East, and Africa. On October 17, 2008, Debtors filed voluntary Chapter 11 bankruptcy petitions in the Bankruptcy Court. Thereafter, Debtors operated their businesses as debtors in possession. On November 10, 2010, the Bankruptcy Court entered orders approving the retention of Shearman & Sterling LLP ("Shearman") as Debtors' counsel, appointing Robert A. Schmitz as Chief Restructuring Officer ("CRO"), and approving the engagement of Quest Turnaround Advisors, LLC ("Quest") to provide the services of the CRO. No objections to these applications were filed, and all payments and expenditures made by the Debtors to their professionals while in Chapter 11 were in accordance with processes approved by the Bankruptcy Court.

On September 30, 2010, the Bankruptcy Court approved a bar date of November 5, 2010, for all claims for administrative expenses, and in November 2010, Debtors closed an asset sale. On November 2 and 5, 2010, Appellant filed identical proofs of claim – Proof of Claim Nos. 324, 338, and 353 – in the amount of $170,705.90 "for services rendered as an employee" (the "Proof of Claim"). (*See* D.I. 12 at B-935.) The Proof of Claim included a letter dated July 1, 2008, signed by the Chief Operating Officer of WorldSpace, that reconfirmed Appellant's employment with WorldSpace Middle East FZCO (Dubai) ("FZCo"), a non-debtor United Arab Emirates ("UAE") affiliate that was 80 percent owned by WorldSpace (the "Employment Letter"). In that letter, Armstrong states:

> I am pleased to reconfirm your employment with WorldSpace Middle East FZCo (the "Company"), located in Dubai, United Arab Emirates that you have held beginning in January 2004. Your employment will be in the position of Managing Director, WorldSpace Middle East FZCo.

2

(D.I. 12 at B-937.) The Employment Letter continues, "In this position you will report to the Chief Operating Officer of WorldSpace, Inc., or his/her designee. (*Id.*) The Employment Letter goes on to state that it is "the complete offer for employment and may not be amended or altered in any way by oral statements, and can only be altered by a written amendment signed by an authorized signatory of the [FZCo]." (*Id.* at B-939.) The Proof of Claim also attached a letter dated March 8, 2010, that accepted Appellant's resignation from FZCo (*id.* at B-941) (the "Resignation Letter"), along with emails and other correspondence addressing Appellant as Managing Director of FZCo (*id.* at B-933–46).

The Debtors objected to Claim Nos. 324 and 338 as duplicative of Claim No. 353, and to Claim No. 353 on the basis that Appellant was an employee of FZCo, not WorldSpace (the "Claim Objection"). (*Id.* at B-925, B-929.) Appellant responded to the Debtors' objections, and on July 20, 2011, following discussions between the parties, the Debtors filed a certification of counsel (*id.* at B-975) that proposed sustaining the Claim Objection with respect to Claim Nos. 324 and 338 as duplicative, and withdrawing the Claim Objection with respect to Claim No. 353 "without prejudice to the estates' rights to object to Claim No. 353 on substantive or other non-substantive grounds." (*Id.* at B-978–80.)

The Debtors moved to convert their Chapter 11 cases to Chapter 7 on May 16, 2012 (the "Conversion Motion") because the Debtors did not believe that they would be able to confirm a Chapter 11 plan. (*Id.* at B-1013–18.) The Debtors stated they had paid "almost all" administrative expenses and that conversion was in the best interests of the estates and their creditors because the estates had limited cash and were incurring administrative expenses by remaining in Chapter 11 (*see id.* at B-1013–15). On May 30, 2012, Appellant filed an Objection to the Conversion Motion, arguing that "conversion would cause him injustice, in that other claims for administrative

3

expenses have been paid, yet his claims remain unpaid." (*Id.* at B-1028, ¶ 13.) Appellant argued in his objection and at the hearing on the Conversion Motion that the Debtor Appellees[2] had improperly failed to convert the cases to Chapter 7 promptly after the Debtors became administratively insolvent and that both the Debtor Appellees and Shearman made misrepresentations to the Bankruptcy Court regarding the payment of administrative claims and the Debtors' intent to propose a plan. (*Id.* at B-1025–30.) At the June 12, 2012, hearing on the Conversion Motion, Appellant asked for the Debtors' cases to be kept in Chapter 11 so that all administrative claims, paid or unpaid (except claims paid pursuant to mutual releases), could be aggregated and distributed *pro rata*. (*Id.* at B-1052:22–1053:13.) The Bankruptcy Court overruled Appellant's objection, noted that the Chapter 7 Trustee was in the best position to protect Appellant's interest, if any, and granted the Conversion Motion. (*Id.* at B-1057:25–1058:5.) On June 13, 2012, Charles M. Forman was appointed as Chapter 7 Trustee ("Trustee").

Nearly two years later, on May 21, 2014, Appellant initiated an adversary proceeding by filing a purported derivative complaint against the Debtor Appellees and Shearman (and against the Trustee as a nominal defendant) (Adv. D.I. 1) (the "Original Complaint"). The Original Complaint asserted causes of action for breaches of fiduciary duty against the Debtor Appellees and for aiding and abetting breach of fiduciary duty against Shearman. (*Id.* ¶¶ 79–87.) The Original Complaint alleged that Appellant had creditor standing because he was an employee of WorldSpace. (*Id.* ¶ 5.) Notwithstanding that any breach of fiduciary duty claims belong to the Debtors' estates, and could be asserted only by the Trustee absent permission from the Bankruptcy Court, Appellant did not obtain derivative standing to pursue these causes of action. The Trustee, as a nominal defendant, answered the Complaint stating that he did not consent to the derivative

---

[2] Appellees Donald J. Frickel (WorldSpace, Inc.'s Executive Vice President, Secretary, and General Counsel), Robert A. Schmitz, and Quest are herein referred to as the "Debtor Appellees."

4

action because Appellant "lacks standing to bring a cause of action on behalf of the Debtors' jointly administered bankruptcy estates." (D.I. 12 at B-1070, ¶ 9.)

On July 16, 2014, Shearman and the Debtor Appellees separately moved to dismiss the Complaint based upon: lack of creditor standing because Appellant was not an employee or creditor of any of the Debtors; lack of derivative standing because Appellant had failed to obtain permission from the Bankruptcy Court to bring estate causes of action; statute of limitations defenses; and failure to state a claim upon which relief can be granted. (*See* Adv. D.I. 12, 14, 17 (opening briefs in support of motions to dismiss).) On August 6, 2014, Appellant filed an answering brief in opposition to the motions to dismiss (Adv. D.I. 20), along with the Amended Complaint (Adv. D.I. 19). The Amended Complaint revised Appellant's purported basis for creditor standing by deleting allegations that Appellant was an employee of WorldSpace and alleging instead that Appellant had a contract claim against WorldSpace. (*Id.* at ¶ 5.) On August 19, 2014, the Trustee answered the Amended Complaint, reiterating that Appellant's claims were barred because Appellant lacked standing to bring estate causes of action. On August 20, 2014, Appellees Shearman, Schmitz, and Quest filed a joint reply brief in support of the Motions to Dismiss (Adv. D.I. 24), and Frickel replied on August 22, 2014 (Adv. D.I. 26).

On September 17, 2014, the Bankruptcy Court entered the Dismissal Order, dismissing the Amended Complaint on the grounds that Appellant lacked creditor standing to bring the action. (Adv. D.I. 29, 30.) In doing so, the Bankruptcy Court *sua sponte* converted the motions to dismiss to motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). In reaching its conclusion that Appellant was not a creditor of the Debtors, the Bankruptcy Court held that: (1) Appellant did not have a contractual claim against WorldSpace; and (2) the Proof of Claim and related documents established that Appellant was an employee of FZCo, not of the Debtors.

On September 22, 2014, Appellant filed a motion for reconsideration, arguing that the Bankruptcy Court had incorrectly read the Amended Complaint to allege that Appellant was an employee of WorldSpace. (Adv. D.I. 31.) Appellant argued that "[n]owhere does the Amended Complaint allege that . . . [Appellant] was an employee of WorldSpace," and "standing to assert this derivative action . . . is not premised on *any* allegation that [Appellant] was an employee of WorldSpace." (Adv. D.I. 31 at 2 (emphasis added).) Rather, Appellant argued it had standing to assert the action on the grounds that the Employment Letter was a contract between Appellant and WorldSpace and that Appellant held a contractual claim against WorldSpace. (*Id.* at 3.) On December 5, 2014, the Bankruptcy Court denied the Reconsideration Motion, finding for the second time that Appellant had not entered into a contractual relationship with the Debtors and noting that Appellant's position on standing has "evolved" over time.[3] (Adv. D.I. 37, 38.) On December 17, 2014, Appellant filed a timely notice of appeal of the Dismissal Order with this court. (D.I. 1.)

### III. PARTIES' CONTENTIONS

Article III of the Constitution requires a party to demonstrate standing by showing a personally suffered or threatened injury as a result of the challenged conduct to invoke federal judicial authority. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). The Third Circuit has held that standing in bankruptcy proceedings is essentially the same as Article III standing and requires a party to demonstrate some injury in fact, *i.e.*, some specific, identifiable trifle of an injury or personal stake in the outcome of the litigation. *See In re Global Indus. Technologies, Inc.*, 645 F.3d 201, 211 (3d Cir. 2011). The

---

[3] *See* Adv. D.I. 37 at 4. The original complaint, filed May 21, 2014, asserted that Appellant "was an employee of WorldSpace . . . between January 2004 and March 29, 2010." (Adv. D.I. 1 at 2). The Amended Complaint, filed August 6, 2014, asserted instead that Appellant "was employed under an employment contract with WorldSpace . . . between January 2004 and March 29, 2010." (Adv. D.I. 19 at 2).

6

parties do not dispute that Appellant must have standing as a creditor of the Debtors in order to assert the estate causes of action or that the Bankruptcy Court was required to make this determination as a threshold issue. (*See* D.I. 9 at 8; D.I. 11 at 12; D.I. 13 at 9.) With respect to the Bankruptcy Court's determination that Appellant lacked creditor standing, Appellant raises two issues on appeal.

First, Appellant argues that the Bankruptcy Court erred in its legal conclusion that Appellant did not have creditor standing based on his contract claim for unpaid salary and benefits under the Employment Letter. (D.I. 9 at 7). Appellant argues that the Employment Letter was signed by the Chief Operating Officer of WorldSpace, on behalf of WorldSpace, and that Appellant and WorldSpace were the only two parties to the Employment Letter. (*See id.* at 8.) Appellant argues that, under contract law, WorldSpace was the promisor, and is liable to Appellant, promisee, for nonperformance its promise. (*See id.*) Conversely, Appellees argue that the Bankruptcy Court correctly concluded that Appellant did not have a contractual relationship with WorldSpace simply because the Employment Letter was signed by WorldSpace's Chief Operating Officer. Appellees argue that while FZCo was an equity subsidiary of WorldSpace, it is clear from the terms of the Employment Letter that Appellant's employment was with FZCo, and that WorldSpace was not a party to the Employment Letter.

Second, Appellant argues that the Bankruptcy Court erred in its legal conclusion that Appellant was not an employee of WorldSpace.[4] (*See* D.I. 9 at 7.) Appellant argues that the Bankruptcy Court reached its conclusion in error and based solely on the conclusion that Appellant

---

[4] Appellant argued in its Reconsideration Motion below that "[n]owhere does the Amended Complaint allege that . . . [Appellant] was an employee of WorldSpace," and "standing to assert this derivative action . . . is not premised on *any* allegation that [Appellant] was an employee of WorldSpace." (D.I. 12 at B-1349-50) (emphasis added). Regarding Appellant's argument on appeal that the Bankruptcy Court erred in its legal conclusion that Sebastian was an employee of WorldSpace, Appellant argue this was not a change in position. Appellant "has always believed he was a WorldSpace employee . . . he simply amended the relevant allegation in the Amended Complaint so that his standing was premised on his claim on the [Employment Letter], not his employee status." (*See* D.I. 9 at 7, n.4.)

7

was an employee of FZCo. (*See id.* 9.) Appellant argues that both the language of the Employment Letter and the allegations in the Amended Complaint were sufficient to allow a trier of fact to conclude that Appellant was a WorldSpace employee as well. (*See id.* at 7.) Conversely, Appellees argue that the Bankruptcy Court correctly applied the dismissal standard and properly concluded, based on the unambiguous terms of the Employment Letter, evidence in the record, and allegations contained in the Amended Complaint, that Appellant had failed to state a plausible claim that he was employed by WorldSpace or that he was otherwise a creditor of the Debtors, and that Appellant therefore lacked legal standing to proceed with the action.[5]

## IV. JURISDICTION AND STANDARD OF REVIEW

The court has appellate jurisdiction over all final orders and judgments from the Bankruptcy Court. *See* 28 U.S.C. § 158(a)(1). This court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). The issues in this appeal are both legal questions that are reviewed *de novo* and factual findings that are reviewed for clear error. *See In re Global Indus. Technologies, Inc.*, 645 F.3d 201, 209 (3d Cir. 2011) (bankruptcy court's legal conclusions are reviewed *de novo,* its factual findings are reviewed for clear error).

Standing is a legal conclusion subject to *de novo* review. *Id.*; *In re Yes! Entm't Corp.*, 316 B.R. 141, 144 (D. Del. 2004). Whether Appellant was an employee of WorldSpace is a factual finding subject to review for clear error. "Where basic facts and facts permissibly inferred therefrom are found by the court sitting as a fact finder, neither the basic facts nor the inferred facts

---

[5] Should the court find that the Bankruptcy Court erred in dismissing the Complaint for lack of standing, Appellees urge the court to affirm the Dismissal Order on the basis of Appellee's Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) arguments for failure to state a claim on which relief can be granted and/or the expiration of the applicable statute of limitations. (*See* D.I. 13 at 1.) Because the court finds no error in the Bankruptcy Court's conclusion that Appellant lacked creditor standing, the court does not reach these other arguments.

may be disturbed on review unless they are deemed clearly erroneous." *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102 (3d Cir. 1981). A finding of fact is clearly erroneous when it is "completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Pharm. Sales Consulting Corp. v. Accucorp Packaging, Inc.*, 231 F. App'x 110, 113 n. 3 (3d Cir. 2007). "Contract interpretation is a question of fact, and review is according to the clearly erroneous standard. . . . In contrast, contract construction is a question of law mandating plenary review." *John F. Harkins Co. Inc., v. Waldinger Corp.*, 796 F.2d 657, 659 (3d Cir. 1986) (internal citations omitted).

The Bankruptcy Court evaluated this case as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is also a legal conclusion subject to plenary review. *Sikirica v. Nationwide Insurance Co.*, 416 F.3d 214, 219 (3d Cir. 2005). Judgment on the pleadings is evaluated by the same standard as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 146 (3d Cir. 2013). As such, the pleadings and inferences to be drawn are viewed in the light most favorable to the plaintiff. *See Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002). The moving party is entitled to judgment as a matter of law if they can establish that there is no material issue of fact to resolve. *Id.*

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility is not a question of whether something possibly or probably is true. Facts merely consistent with claims "stop short of the line between possibility and plausibility of entitlement to relief." *Id.* (citing *Twombly* at 557) (internal

9

quotations omitted). Thus, a complaint is not plausible when it merely infers that a claim is *possible.* Instead, the facts must show that Appellant is clearly entitled to the relief plead. *See id.*

## V. DISCUSSION

In reaching the conclusion that Appellant was not a creditor of WorldSpace based on either (i) an unspecified contract claim against WorldSpace as a party to the Employment Letter, or (ii) a claim for unpaid salary and benefits as an employee of WorldSpace, the Bankruptcy Court first considered the requirements for creditor standing. (*See* Adv. D.I. 29 at 7.) Federal Rule of Bankruptcy Procedure 3001 provides that if a claim is based on a writing, a copy of the writing shall be filed with the proof of claim. *See* Fed. R. Bankr. P. 3001(c)(1). The written proof of claim will only constitute *prima facie* evidence of a claim if it complies with Federal Rule of Bankruptcy Procedure 3001. *See* Fed. R. Bankr. P. 3001(c)(1) and 3001(f). Additionally, a proof of claim must be "executed by a creditor." *See* Fed. R. Bankr. P. 3001(b). Section 101(10) of the Bankruptcy Code defines the term "creditor" to mean an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A).

### A. The Bankruptcy Court Correctly Concluded Appellant's Contract Claim Did Not Support Creditor Standing.

Appellant argues that the Bankruptcy Court erred in dismissing the Amended Complaint for lack of creditor standing because Appellant holds a contract claim against WorldSpace. (D.I. 9 at 7.) Appellant's main argument is that the Employment Letter was signed by Armstrong, Chief Operating Officer of WorldSpace, on behalf of WorldSpace and in its own capacity. Thus, according to Appellant, "the two parties to the Contract were [Appellant] and WorldSpace," and "WorldSpace is clearly the party that made the offer to [Appellant], not FZCo." (*Id.* at 8.) The court disagrees. These are conclusions disguised as factual allegations. To survive dismissal,

Appellant was required to plead facts demonstrating a plausible claim that a Debtor was party to the Employment Letter filed in support of the administrative claim. The Bankruptcy Court reviewed the Employment Letter and found that it did not support Appellant's argument that WorldSpace was a counterparty. (Adv. D.I. 29 at 8.) The Bankruptcy Court stated, the Employment Letter "was an agreement between [Appellant] and FZCo" and "all of the evidence clearly shows that [Appellant] was an employee of [FZCo]." (Adv. D.I. 29 at 9.) In its ruling on Appellant's motion for reconsideration, the Bankruptcy Court again rejected Appellant's argument that he had "some unspecified contract claim" against WorldSpace because an officer of WorldSpace signed the Employment Letter, noting "at all relevant times, FZCo was an 80% equity subsidiary of WorldSpace, Inc." (*See* Adv. D.I. 37 at 5-6.)

On appeal Appellant argues that the fact that WorldSpace was the majority equity holder of FZCo would only support the Bankruptcy Court's conclusion if WorldSpace had "draft[ed] the [Employment Letter] for FZCo's signature and sign[ed] it on behalf of FZCo as its majority shareholder." (*See* D.I. 9 at 8.) Because WorldSpace signed the Employment Letter in its own capacity, Appellant argues, WorldSpace is the party obligated under the Employment Letter. (*See id.*) In support of this argument, Appellant cites *K&G Constr. Co. v. Harris*, 164 A.2d 451 (Md. 1960), for the basic tenet of contract law that each party to a contract "is required to perform his promise, and, if one does not perform, he is liable to the adversary party for such non-performance." *Id.* at 455. The *K&G* case, however, addressed the issue of whether a contract's promises and counter-promises were independent (parties intended that performance by each of them was in no way conditioned upon performance of the other) or mutually dependent (parties intended that performance by one was conditioned upon performance by the other). *See id.* at 454-55. This issue arose under an agreement between a contractor and various subcontractors, and no

party signed as majority shareholder of another entity. The *K&G* case did not involve similar facts and does not support the conclusion that WorldSpace was necessarily a party to the Employment Letter because its Chief Operating Officer executed it. Appellant cites no other case law in support of this argument.

The Bankruptcy Court also considered Appellant's argument that "WorldSpace guaranteed FZCo's obligations" and was therefore a party. (*See* D.I. 29 at 8.) While such a guaranty would be consistent with Appellant's argument that WorldSpace was a party to the Employment Letter, without sufficient factual support, the Bankruptcy Court was not required to accept the assertion as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678. The Bankruptcy Court found "nothing in the record to support th[e] claim" that WorldSpace guaranteed FZCO's obligations: "[i]ndeed the employment letter is inconsistent with that assertion." (*See* D.I. 29 at 8.) Likewise, the court can find no evidence in the record supporting this assertion.

In contrast to Appellant, Appellees argue that the unambiguous terms of the Employment Letter support the Bankruptcy Court's conclusion that the agreement between Appellant and FZCo "was carefully drafted to make it clear that WorldSpace was not committed to [Appellant] for anything." (Adv. D.I. 37 at 6.) The opening line of the Employment Letter, clearly states "I am pleased to reconfirm your employment with [FZCo]" and noted that Appellant had worked for FZCo since January 2004. (D.I. 12 at B-937.) The Employment Letter also defined Appellant's responsibilities as "[d]eveloping and implementing strategic and tactical plans for achieving [FZCo]'s operational, financial and strategic goals in the Middle Eastern region" and "managing [FZCo] staff located in the Middle Eastern region." (*Id.*) Appellees argue that while the Employment Letter clearly set forth obligations between FZCo and Appellant,[6] "it did not create

---

[6] The Employment Letter obligated FZCo, among other things, to employ Appellant as a Managing Director, withhold applicable taxes from his paychecks, designate a physician to provide a physical, keep his employment terms

or describe a single obligation on the part of WorldSpace." (*See* D.I. 13 at 11.) Appellees point out that WorldSpace even lacked authority to amend the Employment Letter without written authorization from FZCo. (*Id.*) Finally, Appellees argue that the Proof of Claim further supports the Bankruptcy Court's conclusion that Appellant's employment was with FZCo, as communications attached thereto consistently referred to Appellant's position as Managing Director of FZCo. (*See id.*)

The Bankruptcy Court considered all possible grounds on which WorldSpace might be a counterparty to the Employment Letter, including a thorough review of the Amended Complaint, the Proof of Claim, and the evidence in the record, and found no plausible basis for this assertion. Despite the fact that the Employment Letter was signed by a WorldSpace officer, it is clear from its unambiguous terms that Appellant's employment was with FZCo, and no facts or evidence in the record suggest any plausible basis for a contrary conclusion. Reviewing the Bankruptcy Court's conclusion *de novo*, and giving no special weight to the Bankruptcy Court's conclusion, the court finds no error in the Bankruptcy Court's holding that WorldSpace was not party to the Employment Letter and Appellant was not a creditor of WorldSpace on this basis.

**B. The Bankruptcy Court Correctly Concluded that Appellant Was Not an Employee of WorldSpace.**

Appellant argues that the Bankruptcy Court improperly concluded that, because Appellant was an FZCo employee, he was not a WorldSpace employee. (*See* D.I. 9 at 9). Appellant argues that his employment by FZCo does not preclude his status also as an employee of WorldSpace, and cites the *Mackall* case for the proposition that, "under certain circumstances, a person performing a given function simultaneously may be the employee of two employers." *Mackall v.*

---

confidential, pay him up to four months' salary if he is terminated without cause, and provide him with health insurance, 30 days of vacation, and four economy-class air tickets.

13

*Zayre Corp.*, 443 A.2d 98, 102 (Md. 1982). Appellees respond that Appellant never alleged that he was jointly employed by both companies. (D.I. 13 at 10, n.6.) Indeed, this assertion is not made in the Amended Complaint. (*See* Adv. D.I. 19.) Appellees further argue that Appellant's characterization of the Bankruptcy Court's ruling is incorrect. According to Appellees, the Bankruptcy Court did not conclude that "because Appellant was an FZCo employee, he therefore was not a WorldSpace employee," nor did the Bankruptcy Court fail to consider whether Appellant was jointly employed by both companies. (D.I. 13 at 10, n.6.) The court agrees that the Bankruptcy Court specifically considered whether Appellant was an employee of WorldSpace as well as its subsidiary. (*See* Adv. D.I. 29 at 10 (observing that the Employment Agreement "provided that [Appellant] was to report to an office of WorldSpace, while making it *equally* clear that [Appellant] was *not* a WorldSpace employee" (emphasis added)).)

Appellant argues that, under Maryland law,[7] "a trier of fact could conclude" from the Employment Letter that Appellant was a WorldSpace employee. (*See* D.I. 9 at 9, 12-13.) However, Appellant's argument misapprehends the proper dismissal standard, which is facial plausibility. The Bankruptcy Court was not required to determine whether something could possibly be concluded by a trier of fact, but whether the factual content of the Amended Complaint and evidence allowed the Bankruptcy Court to draw a reasonable inference. *See Iqbal*, 556 U.S. at 678. Appellant argues it met this burden because that certain provisions of the Employment Letter make clear that Appellant was an employee of WorldSpace. (*See* D.I. 9 at 10-12) Appellant cites four specific provisions of the Employment Letter that make reference to his employment by WorldSpace, including provisions regarding Appellant's eligibility to participate in WorldSpace's

---

[7] Appellant cites Maryland law with respect to issues relating to the Employment Letter and his employment status. Appellant argues that WorldSpace is headquartered in Maryland and the Employment Letter does not state what law applies. Appellees do not appear to take a position on whether Maryland law governs interpretation of the Employment Letter and Appellant's employment status. (*See* B-937-39).

14

incentive program as a "key employee" and an expectation that Appellant would "play a key role in the growth and success of WorldSpace in the Middle East." Again, the court disagrees. The Bankruptcy Court properly declined to limit its interpretation to these specific passages, as it was required to interpret the Employment Letter as a whole. *See Williams v. Metzler*, 132 F.3d 937, 947 (3d Cir. 1997) ("A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together") (quoting Restatement (Second) of Contracts, § 202(2)). Moreover, the rules of contract interpretation require that a contract that is express and clear on its face be given its plain meaning. *See In re Montgomery Ward & Co., Inc.*, 428 F.3d 154, 161 (3d Cir. 2005). Here, the Employment Letter clearly set forth that FZCo was Appellant's employer. The Bankruptcy Court properly interpreted the Employment Letter.

Nor do the factual assertions contained in the Amended Complaint support a reasonable inference that Appellant was an employee of WorldSpace. The court has no doubt that under some circumstances, a party may be the employee of two employers. Nonetheless, Appellant had the burden of pleading sufficient facts, taken as true, to support his claim that he was employed by WorldSpace and had creditor standing based on his employment claim. On appeal, Appellant argues the Amended Complaint contained sufficient factual basis for him to be "*deemed* to be an employee of WorldSpace." (D.I. 10 at 72 (emphasis added).) The basis for this argument is that Appellant took direction from and reported to an officer of WorldSpace (Adv. D.I. 19 at ¶ 18); wound up the operations of the non-debtor affiliate FZCo (*id.* at ¶ 19); paid money to avoid litigation by terminated employees against WorldSpace (*id.*); and was entitled to participate in WorldSpace's group incentive plan (D.I. 9 at 10).

Appellant cites *Mackall*, in which the Court of Appeals of Maryland set forth factors for determining whether an employer-employee relationship exists, including: "(1) the power to select

and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular business of the employer." *See Mackall,* 443 A.2d at 103. Based on the above factors, the *Mackall* court determined that the evidence in that case supported a reasonable inference that the plaintiff was simultaneously employed by two employers who "both exercised control over [plaintiff] in the performance of her duties." *Id.* at 231. The Bankruptcy Court considered and rejected Appellant's contentions as insufficient to draw a reasonable inference that Appellant was a WorldSpace employee, observing: "[t]hat Plaintiff may have taken direction from an officer of WorldSpace is irrelevant; Plaintiff's employment agreement provided that Plaintiff was to *report to* an officer of WorldSpace, while making it equally clear that he was *not* a WorldSpace employee." (*See* D.I. 29 at 10 (emphasis added).) The court agrees. *Mackall* did not involve an agreement similar to the Employment Letter which clearly set forth the employment relationship between the parties, the court agrees that the factual assertions contained in the Amended Complaint do not support a reasonable inference that Appellant was an employee of WorldSpace.

Based on its review of the Employment Agreement, the assertions in the Amended Complaint, and the evidentiary record, the court finds an insufficient factual basis for the Bankruptcy Court to have drawn a reasonable inference that Appellant was a WorldSpace employee or a creditor of WorldSpace on account of its claim for unpaid salary and benefits. In reviewing this matter, the Bankruptcy Court correctly applied the dismissal standard and properly found no basis to infer that Appellant was an employee or creditor of WorldSpace. The court find no facts or evidence in the record suggest a plausible basis for a contrary conclusion. On this basis, the Bankruptcy Court properly entered the Dismissal Order.

### C. Appellant Failed to Obtain Derivative Standing to Pursue Breach of Fiduciary Duty Claims on Behalf of the Estates.

Even assuming that Appellant did have creditor standing – based on either a contract claim against WorldSpace or as an employee of WorldSpace with an administrative claim for unpaid salary and benefits – Appellant failed to obtain relief from the Bankruptcy Court granting him derivative standing to pursue the alleged breach of fiduciary duty claims belonging to the Debtors. Appellant's failure to obtain derivative standing provides an independent basis justifying the Bankruptcy Court's dismissal of the Adversary Proceeding.

A chapter 7 trustee is successor in interest to "all legal or equitable interests of the debtor in property," including causes of action held by the debtor. *See In re D'Amore*, 472 B.R. 679, 694 (Bankr. D. N.J. 2012). "It has long been held that rights of action against officers, directors and shareholders of a corporation for breaches of fiduciary duties, which can be enforced by either the corporation directly or the shareholders derivatively before bankruptcy, become property of the estate which the trustee alone has the right to pursue after the filing of a bankruptcy petition." *Koch Ref. v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1344 (7th Cir. 1987). Thus, the Trustee was the sole party with authority to bring the estate cause of action for breach of fiduciary duty, absent permission from the Bankruptcy Court. *D'Amore*, 472 B.R. at 694. "A cause of action that is property of the estate is properly pursued by the bankruptcy trustee because it inures to the benefit of all creditors." *In re Emoral*, 740 F.3d 875, 879 (3d Cir. 2014). Permitting the chapter 7 trustee alone to pursue the estate's cause of action "promotes the orderly distribution of assets in bankruptcy and comports with the fundamental bankruptcy policy of equitable distribution to all creditors that should not be undermined by an individual creditor's claim." *Id.* (internal citations and quotations omitted).

In order to bring the alleged breach of fiduciary duty claims on behalf of the Debtors' estates, Appellant was required to obtain permission from the Bankruptcy Court. *In re Summit Metals, Inc.*, 477 B.R. 484, 502 (Bankr. D. Del. 2012) ("Absent authorization by the bankruptcy court, the Trustee is the only party who can assert a claim for damages on behalf of the bankruptcy estate") (quoting In re Davis, 312 B.R. 681, 685 (Bankr. D. Nev. 2004). A creditor seeking derivative standing has the burden of demonstrating (1) the existence of a colorable claim; (2) that the trustee unjustifiably refused to pursue the claim, and (3) the permission of the bankruptcy court to pursue the claim. *In re Redden*, 2013 WL 5436368, at *2 (Bankr. D. Del. Sept. 30, 2013) (citations omitted). Court approval of creditor derivative standing is necessary in order to guard against – as is the case here – a plaintiff attempting to "usurp the trustee's role as representative of the estate." *In re Cooper*, 405 B.R. 801, 804 (N.D. Tex. 2009). At no time did Appellant obtain relief from the Bankruptcy Court granting him derivative standing to pursue the breach of fiduciary duty claims asserted in the Amended Complaint. Dismissal of the Amended Complaint is justified on this basis as well.

## VI. CONCLUSION

The Employment Letter is unambiguous and makes clear that Appellant was employed by FZCo and that WorldSpace had no obligations to Appellant under the Employment Letter. The Bankruptcy Court correctly applied the dismissal standard, and the court finds nothing in the record to suggest any plausible basis that Appellant was a WorldSpace employee or held a contract claim against WorldSpace. Thus, the court finds no error with the Bankruptcy Court's conclusion that Appellant lacked creditor standing. Appellant also failed to obtain derivative standing to pursue the estate causes of action, which is an independent basis justifying dismissal of the Amended Complaint.

For the foregoing reasons, the court will AFFIRM the Dismissal Order.

September 22, 2016

_____
UNITED STATES DISTRICT JUDGE